

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
GRAND JURY B-09-01

UNITED STATES OF AMERICA

v.

WILLIAM A. TRUDEAU, JR.

Criminal Number:

Violations:

18 U.S.C. § 1349 [Conspiracy]
18 U.S.C. § 1344 [Bank Fraud]
18 U.S.C. § 1341 [Mail Fraud]
18 U.S.C. § 1343 [Wire Fraud]

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
### [18 U.S.C. § 1349 – Conspiracy to Commit Bank Fraud, Mail Fraud and Wire Fraud]

### The Defendant and Other Relevant Parties

1.       At all times relevant to this Indictment, defendant WILLIAM A. TRUDEAU, JR.

(hereinafter "TRUDEAU") was: a) a resident of the State of Connecticut, b) a property

developer, c) an unnamed principal and founder of a real estate development company in

Fairfield County, Connecticut known as Aspetuck Building & Development (hereinafter

"Aspetuck"), and d) an unnamed principal of Huntington South Associates, LLC (hereinafter

"Huntington Associates"), a limited liability company that was a shell company utilized by

TRUDEAU to pay for personal expenses and to secure loans fraudulently.

2.       At all times relevant to this Indictment, a court order, issued on July 15, 2003,

was pending against defendant TRUDEAU requiring that he pay restitution in the amount of

$458,312.33.

3.       At all times relevant to this Indictment, co-conspirator Joseph Kriz (hereinafter

"Kriz"), who is not charged as a defendant herein, was a resident of the State of Connecticut as

well as a real estate lawyer, mortgage broker and title insurance agent, and in each of these

capacities, was entitled to receive a fee for all real estate closings in which he was involved.

4.    At all times relevant to this Indictment, Kriz was the named principal of

Aspetuck.

5.    At all times relevant to this Indictment, co-conspirator Heather Bliss (hereinafter

"Bliss"), who is not charged as a defendant herein, was a resident of the State of Connecticut,

married to defendant TRUDEAU, and employed by Kriz as a paralegal.  As a paralegal, Bliss

was responsible for, among other things, preparing and maintaining all legal and bank documents

related to real estate transactions handled by Kriz.  Bliss was also the named principal of

Huntington Associates.

6.    At all times relevant to this Indictment, co-conspirator Fred Stevens (hereinafter

"Stevens"), who is not charged as a defendant herein, was a resident of the State of Connecticut

and a mortgage broker who matched mortgage applicants with lending institutions in exchange

for a fee, and thereby assisted his co-conspirators in applying for mortgages.

7.    At all times relevant to this Indictment, co-conspirator Thomas Preston

(hereinafter "Preston"), who is not charged as a defendant herein, was a resident of the State of

Connecticut and a real estate appraiser who provided appraisals to his co-conspirators.  Preston

was aware that certain appraisals prepared by him or his company, Redding Appraisal Group,

were part of some of the mortgage application packages that his co-conspirators submitted to

financial institutions and mortgage originators.

8.    At all times relevant to this Indictment, JP Morgan Chase Bank was a financial

institution headquartered in New York, New York; IndyMac Bank was a financial institution

headquartered in Pasadena, California; and Fremont Investment & Loan was a financial

institution headquartered in La Brea, California that maintained an office in Elmsford, New

York. Representatives of these financial institutions marketed loans and mortgages in

Connecticut and elsewhere. The deposits of these financial institutions were insured by the

Federal Deposit Insurance Corporation.

       9.      At all times relevant to this Indictment, New Century Financial Corporation was a

real estate financial trust that originated mortgages and was headquartered in Irvine, California;

Argent Mortgage Company was a lending institution that originated mortgages and was

headquartered in Orange, California; and Long Beach Mortgage Corporation was a lending

institution that originated mortgages and was a fully owned subsidiary of Washington Mutual

Bank, a financial institution headquartered in Seattle, Washington.

      10.     At all times relevant to this Indictment, defendant TRUDEAU and Kriz negotiated

for short term loans at higher than market interest rates with certain lenders (hereinafter "hard

money lenders").

## The Conspiracy

      11.     From in or about February 2004 to in or about April 2010, in the District of

Connecticut and elsewhere, defendant TRUDEAU, together with Kriz, Bliss, Stevens, Preston,

and others, known and unknown to the Grand Jury, unlawfully, willfully and knowingly did

combine, conspire, confederate and agree together and with each other to commit offenses

against the United States as follows:

      (a)     to execute and attempt to execute a scheme and artifice to defraud federally

insured financial institutions, and to obtain the moneys owned by and under the custody and

control of the financial institutions by means of materially false and fraudulent pretenses, representations and promises, as more fully set forth below, in violation of Title 18, United States Code, Section 1344; and

(b)      to devise and intend to device a scheme and artifice to defraud mortgage lenders by means of materially false pretenses, representations, and promises, and to utilize the United States mails, private and commercial interstate carriers, and interstate wire communications for the purpose of executing that scheme and artifice, in violation of Title 18, United States Code, Sections 1341 and 1343.

### The Principal Objects of the Conspiracy

12.      The principal objects of the conspiracy were: a) to submit false and fraudulent loan applications to financial institutions and mortgage lending institutions; b) to use the proceeds of the fraudulently obtained loans for the co-conspirators' benefit; c) to repay high interest loans from hard money lenders with whom defendant TRUDEAU had negotiated and from whom the co-conspirators had borrowed money; d) to ensure that defendant TRUDEAU's name did not appear on any documentation related to the loans or the properties for which the loans were obtained; and (e) to maintain and hide money in the accounts of business entities or individuals, other than defendant TRUDEAU, in order to prevent the collection of restitution, in the amount of $458,312.33, that defendant TRUDEAU was required to pay pursuant to court order.

## The Manner and Means of the Conspiracy

13.     The manner and means by which defendant TRUDEAU and his co-conspirators sought to accomplish the objects and purposes of the conspiracy included, among other things, the following:

14.     It was part of the conspiracy that on or about February 13, 2003, defendant TRUDEAU and Kriz formed Aspetuck.  On or about February 27, 2004, Aspetuck opened a bank account at Fairfield County Bank, and Kriz was the sole signatory on the account.  Kriz funded the account with, among other monies, funds from his attorney trust account.  Defendant TRUDEAU issued checks drawn on the Aspetuck account, which were hand-signed or stamp-signed by Kriz.

15.     It was further part of the conspiracy that, on or about April 4, 2001, defendant TRUDEAU and Bliss formed Huntington Associates.  In or about May 2005, Huntington Associates opened a bank account at Fairfield County Bank, and Bliss was the sole signatory on the account.  Defendant TRUDEAU issued checks drawn on the Huntington Associates account, which were either signed by Bliss or signed by defendant TRUDEAU in Bliss's name.

16.     It was further part of the conspiracy that, beginning in or about September 2005 and continuing through in or about October 2006, the Huntington Associates bank account was funded by checks drawn on the Aspetuck account and by loans from hard money lenders.  Defendant TRUDEAU instructed customers of Aspetuck to make payments to Huntington Associates in order to make it appear that Bliss had sufficient business deposits and income to qualify for large mortgage loans.  Bliss then falsely claimed in various mortgage applications that

the monies deposited into the Huntington Associates bank account constituted her monthly business income.

17.     It was further part of the conspiracy that, on or about October 22, 2006, Fairfield County Bank closed the Aspetuck bank account after defendant TRUDEAU caused a check to bounce.  Thereafter, all deposits that would have been made into the Aspetuck bank account were directed to the Huntington Associates bank account.

18.     It was further part of the conspiracy that defendant TRUDEAU located properties for purchase and development and negotiated the terms of mortgages on behalf of private individuals for those properties.  TRUDEAU also negotiated for and obtained other financing from private individuals by falsely and fraudulently representing his need for the financing and the value of the security that he and his co-conspirators were providing for the financing.

19.     It was further part of the conspiracy that defendant TRUDEAU directed and caused others to submit false mortgage loan applications to federally insured financial institutions and to mortgage originators to obtain mortgages on the various properties that defendant TRUDEAU had located in Fairfield County, Connecticut in order to: a) develop and sell the properties for profit, and b) pay off debts owed to hard money lenders from whom defendant TRUDEAU had previously obtained high-interest loans.

20.     It was further part of the conspiracy that the mortgage loan applications included false and fraudulent representations about the applicant's income, false and fraudulent representations that the mortgages were for owner-occupied premises, and omissions as to the mortgage applicant's true indebtedness.

21.     It was further part of the conspiracy that, after Stevens informed defendant TRUDEAU, Bliss, and Kriz that a mortgage would not appear on an applicant's credit report until approximately sixty days after the mortgage closing, defendant TRUDEAU directed Bliss and others to purchase additional properties and to obtain additional mortgages during that sixty-day window.  As a result, Stevens and Bliss did not report initial mortgages on subsequent mortgage applications made within the sixty-day window.  These omissions allowed the mortgage applicants to obtain loans for which they were not qualified and to obtain these mortgages at lower interest rates.

22.     It was further part of the conspiracy that defendant TRUDEAU took steps to insure that his name did not appear on any documentation related to the loans or the properties for which the loans were obtained; maintained money in the bank accounts of other persons or business entities to prevent the collection of $458,312.33 in restitution that defendant TRUDEAU owed; and provided assurances to co-conspirators that their fraudulent acts would not be discovered.

## Overt Acts

23.     In furtherance of the above conspiracy, and in order to effectuate the objects thereof, the following overt acts, among others, were committed in the District of Connecticut and elsewhere:

24.     From in or about September 2005 through in or about February 2006, approximately $237,500 in checks drawn on Aspetuck's bank account were deposited into the Huntington Associates bank account.

25.     From in or about February 2006 through in or about March 2006, defendant TRUDEAU caused Kriz to negotiate $225,000 in lending from Private Lender A, known to the

Grand Jury, and caused the $225,000 to be wire transferred into the Huntington Associates bank account.

## 6 Sylvan Road South, Westport (First Mortgage)

26a.    In or about March 2006, Bliss applied for a mortgage for a residential property located at 6 Sylvan Road South, in Westport, Connecticut ("6 Sylvan Road South"). Bliss falsely listed an inflated monthly income of $35,689.55, which reflected the average of the total deposits into the Huntington Associates account for the previous year, and submitted one year of bank statements from the Huntington Associates bank account as verification of the inflated income.

26b.    On or about April 26, 2006, Bliss received a mortgage for the property located at 6 Sylvan Road South in the amount of $1,300,000 from Long Beach Mortgage ("6 Sylvan Road South Mortgage").

26c.    On or about April 27, 2006, the HUD-1 and other documents related to the 6 Sylvan Road South Mortgage were sent by commercial interstate carrier from Bridgeport, Connecticut to J.P Morgan Chase Bank's office in Clark, New Jersey

## 95 Saugatuck Avenue, Westport

27a.    On or about May 25, 2006, Bliss applied for a mortgage for a residential property located at 95 Saugatuck Avenue, in Westport, Connecticut ("95 Saugatuck Avenue"). Bliss falsely represented her base monthly employment income to be $45,000, and submitted one year of bank statements from her Huntington Associates bank account, falsely representing that the deposits into the bank account reflected her income.    Additionally, Bliss falsely represented on the mortgage application that she rented her primary residence.

27b.    On or about May 31, 2006, Bliss caused a document titled "TOTAL MORTGAGE AND CONSUMER DEBTS REMAINING OPEN", which omitted the 6 Sylvan Road South Mortgage, to be transmitted by means of wire communication in interstate commerce between Westport, Connecticut and Fremont Investment & Loan's office in Elmsford, New York.

27c.    On or about June 1, 2006, Bliss obtained a mortgage for 95 Saugatuck Avenue in the amount of $464,000 from Fremont Investment & Loan ("95 Saugatuck Avenue Mortgage").

### 91 Saugatuck Avenue, Westport

28a.    On or about May 31, 2006, Bliss applied for a mortgage for a residential property located at 91 Saugatuck Avenue, in Westport, Connecticut ("91 Saugatuck Avenue"). Bliss falsely represented her base monthly employment income to be $45,000, and submitted bank records from her Huntington Associates bank account, falsely representing that the deposits into the bank account were her income and that she rented "6 Sylvan Road S".

28b.    On or about June 1, 2006, Bliss obtained a mortgage for 91 Saugatuck Avenue in the amount of $531,000 from Fremont Investment & Loan ("91 Saugatuck Avenue Mortgage").

### 9 Fragrant Pines Court, Westport

29a.    On or about June 6, 2006, Bliss applied for two mortgages for a residential property located at 9 Fragrant Pines Court, in Westport, Connecticut ("9 Fragrant Pines Court") and used Stevens as the mortgage broker on the transaction. Bliss falsely represented her base monthly employment income to be $22,933.30, and submitted Huntington Associates bank statements falsely representing that the deposits into the bank account were her income. Additionally, on the mortgage application, Bliss falsely claimed that she intended to use 9 Fragrant Pines Court as her primary residence and that she rented rather than owned her residence at 6 Sylvan Road South.

29b.     On or about June 6, 2006, Bliss obtained two mortgages for 9 Fragrant Pines Court in the amounts of $518,000 and $129,500 from New Century Corporation ("9 Fragrant Pines Court Mortgages").

29c.     On or about June 7, 2006, the HUD-1 and other mortgage-related documents for the 9 Fragrant Pines Court Mortgages were sent by commercial interstate carrier from Bridgeport, Connecticut to New Century Mortgage Corporation's office in Pearl River, New York.

### 171 Weston Road, Weston

30.     On or about October 19, 2006, defendant TRUDEAU and his co-conspirators obtained financing in the name of Buyer A, who is known to the Grand Jury, on the residential property located at 171 Weston Road, Weston, Connecticut.  Stevens applied for two separate loans on this property, one in the amount of $1,686,750 and the other one in the amount of $400,000.  The loan application for the larger amount failed to include any reference to loans from hard money lenders that encumbered the property.

### 35 Prospect Road, Westport

31a.     On or about February 17, 2005, Aspetuck offered to purchase 35 Prospect Road, in Westport, Connecticut ("35 Prospect Road") for $2.7 million and to make a down-payment in the amount of $700,000 toward the purchase.

31b.     On or about November 30, 2006, defendant TRUDEAU and his co-conspirators fraudulently obtained financing for 35 Prospect Road in the amount of $2 million in Buyer A's name from IndyMac Bank by: a) falsely inflating Buyer A's income and assets to qualify for a larger loan amount; b) submitting a letter to IndyMac Bank that falsely represented that a down payment on the property was a bonus given to Buyer A by his employer; c) falsely claiming that the property would

be Buyer A's primary residence in order to qualify for a lower interest rate; d) omitting any reference to the October 19, 2006 loan Buyer A had obtained on 171 Weston Road because the loan had not yet appeared on Buyer A's credit report; and e) causing Preston to prepare a property appraisal for 35 Prospect Road that falsely represented that the house had a finished attic to justify the application for a larger loan amount, after assuring Preston that no one would uncover this false statement because the structure at 35 Prospect Road would shortly be demolished.

31c.    On or about December 18, 2006, defendant TRUDEAU and his co-conspirators, fraudulently obtained a home equity line of credit in the amount of $200,000 on 35 Prospect Road by overstating Buyer A's income on the mortgage application and by failing to disclose the mortgage in Buyer A's name on 171 Weston Road obtained on or about October 19, 2006.

### 6 Sylvan Road South, Westport (Second Mortgage)

32a.    In or about January 2007, Bliss applied for a second mortgage for 6 Sylvan Road South in the amount of $250,000.    Bliss falsely represented her base monthly employment income as $53,000, and submitted Huntington Associates bank statements falsely claiming that the deposits were her income.

32b.    On or about January 25, 2007, Bliss obtained a second mortgage for 6 Sylvan Road South in the amount of $250,000 from J.P. Morgan Chase Bank ("6 Sylvan Road South Second Mortgage").

32c.    On or about January 26, 2007, the HUD-1 and other documents related to the 6 Sylvan Road South Second Mortgage were sent by commercial interstate carrier from Bridgeport, Connecticut to J.P Morgan Chase Bank's office in Woodcliff Lake, New Jersey.

**87 Saugatuck Avenue, Westport**

33a.    In or about January 2007, Bliss applied for a mortgage to purchase 87 Saugatuck Avenue, in Westport, Connecticut ("87 Saugatuck Avenue"). Bliss falsely represented her base monthly employment income to be $53,000, and submitted a letter, signed by Bliss on Huntington Associates's letterhead, in which she falsely represented that her net income for the twelve months ending December 31, 2006 was $788,232.00.

33b.    On or about February 2, 2007, Bliss received a mortgage on 87 Saugatuck Avenue in the amount of $385,000 from the Argent Mortgage Company ("87 Saugatuck Avenue Mortgage").

33c.    On or about February 2, 2007, defendant TRUDEAU and his co-conspirators received a seller-financed mortgage on 87 Saugatuck Avenue in the amount of $250,000 which was not reported on the HUD-1, a final closing form which should reflect all incoming funds.

33d.    On or about February 2, 2007, the HUD-1 and other closing documents related to the 87 Saugatuck Avenue Mortgage were transmitted by means of wire communication in interstate commerce, to wit, by facsimile communication, between Bridgeport, Connecticut and Argent Mortgage Company's Westchester County, New York office.

**9 Fragrant Pines Court, Westport (Private Lending)**

34a.    On or about March 27, 2010, while in Connecticut, defendant TRUDEAU placed a telephone call to Private Lender B, who is known to the Grand Jury, in Michigan. During the call, TRUDEAU falsely represented to Private Lender B that he needed $50,000 in financing to complete the construction of a house at 9 Fragrant Pines Court, and that he would repay the loan from the sale proceeds of the house.

34b.    On or about April 13, 2010, Private Lender B sent an e-mail, through interstate wires, to defendant TRUDEAU asking whether defendant TRUDEAU had received a signed contract.

34c.    On or about April 13, 2010, defendant TRUDEAU replied by email, through interstate wires, stating that the purchaser had signed the contract, when in fact, defendant TRUDEAU knew there was no signed contract for construction of a house at 9 Fragrant Pines Court.

34d.    On or about April 13, 2010, defendant TRUDEAU and Bliss provided Private Lender B with a blanket mortgage for residential properties located at 87 Saugatuck Avenue, 91 Saugatuck Avenue, 95 Saugatuck Avenue and 6 Sylvan Road South, all of which were in foreclosure, unbeknownst to Private Lender B.

34e.    On or about April 15, 2010, Private Lender B wire transferred $50,000 to a Bank of America bank account in the name of defendant TRUDEAU.

34f.    Defendant TRUDEAU did not use the $50,000 to complete construction the house at 9 Fragrant Pines Court, as he had represented to Private Lender B, but instead used the money for personal expenses, including the payment of legal fees and the rental of a summer house in Nantucket, Massachusetts.

35.    As a result of the fraudulent conduct set forth in paragraphs 1 through 10 and 12 through 34, defendant TRUDEAU and his co-conspirators defrauded federally insured financial institutions of more than $1,000,000, in violation of Title 18, United States Code, Section 1344, and obtained in excess of $1,000,000 from mortgage lenders and private individuals by devising a scheme and artifice to defraud that utilized the United States mails, private and commercial interstate carriers, and interstate wire communications for the purpose of executing that scheme and artifice, in violation of Title 18, United States Code, Sections 1341 and 1343.

-13-

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO and THREE
### [18 U.S.C. § 1344 - Bank Fraud]

36.     The allegations set forth in Paragraphs 1 through 10 and 12 through 35 of this Indictment are hereby realleged and incorporated as though set forth fully herein.

37.     During the time periods set forth below, in the District of Connecticut and elsewhere, defendant TRUDEAU, and others known and unknown to the Grand Jury, knowingly, willfully and with intent to defraud did execute and attempt to execute a scheme and artifice to defraud the financial institutions listed below, the accounts of which were insured by Federal Deposit Insurance Corporation, and did submit fraudulent mortgage applications and thereby obtain moneys and funds in the amounts listed below, owned by the financial institutions by means of false and fraudulent pretenses, representations and promises, each mortgage constituting a separate count of this Indictment:

| COUNT | FINANCIAL INSTITUTION | PROPERTY | DATE | AMOUNT |
|---|---|---|---|---|
| TWO | IndyMac Bank | 35 Prospect Rd., Westport | 2/17/05 to 11/30/06 | $2,000,000 |
| THREE | J.P. Morgan Chase Bank | 6 Sylvan Rd. South, Westport | 12/06 to 1/25/07 | $250,000 |

All in violation of Title 18, United States Code, Section 1344.

## COUNTS FOUR THROUGH SIX
### [18 U.S.C. § 1341 - Mail Fraud]

38.    The allegations set forth in Paragraphs1 through 10 and 12 through 35 of this Indictment are hereby realleged and incorporated as though set forth fully herein.

39.    From in or about February 2004 through in or about February 2008, in the District of Connecticut and elsewhere, defendant TRUDEAU and others, known and unknown to the Grand Jury, knowingly, willfully and with intent to defraud did devise and intend to devise a scheme and artifice to defraud mortgage originators and to obtain money by means of materially false and fraudulent pretenses, representations and promises, as more fully set forth herein.

### The Execution of the Scheme and Artifice

40.    On or about the dates set forth below, for the purpose of executing the above scheme and artifice and attempting to do so, in the District of Connecticut and elsewhere, defendant TRUDEAU knowingly, willfully and with intent to defraud caused a mailing to be delivered by a private interstate carrier as set forth below, each mailing constituting a separate count of this Indictment:

| COUNT | DATE OF MAILING | PROPERTY | ITEM SENT BY PRIVATE CARRIER |
|-------|-----------------|----------|------------------------------|
| FOUR | April 27, 2006 | 6 Sylvan Rd. South, Westport | HUD-1 and other mortgage documents |
| FIVE | June 7, 2006 | 9 Fragrant Pines., Westport | HUD-1 and other mortgage documents |
| SIX | January 26, 2007 | 6 Sylvan Rd. South, Westport | HUD-1 and other mortgage documents |

All in violation of Title 18, United States Code, Section 1341.

## COUNTS SEVEN THROUGH NINE
### [18 U.S.C. § 1343 - Wire Fraud]

41.     The allegations set forth in Paragraphs1 through 10 and 12 through 35 of this Indictment are hereby realleged and incorporated as though set forth fully herein.

42.     From in or about February 2004 through in or about April 2010, in the District of Connecticut and elsewhere, defendant TRUDEAU and others, known and unknown to the Grand Jury, knowingly and willfully and with intent to defraud did devise and intend to devise a scheme and artifice to defraud mortgage originators, financial institutions and private individuals, and to obtain money by means of materially false and fraudulent pretenses, representations and promises, as more fully set forth herein.

### The Execution of the Scheme and Artifice

43.     On or about the dates set forth below, for the purpose of executing the above scheme and artifice and attempting to do so, at the locations set forth below in the District of Connecticut and elsewhere, defendant TRUDEAU knowingly, willfully and with intent to defraud caused to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals,

-16-

pictures and sounds as described below, each interstate wire communication constituting a separate count of this Indictment:

| COUNT | DATE OF WIRE | PROPERTY | ITEM SENT BY INTERSTATE WIRE COMMUNICATION | STATES INVOLVED IN WIRE |
|---|---|---|---|---|
| SEVEN | May 31, 2006 | 95 Saugatuck Ave, Westport | Facsimile "Total Mortgage and Consumer Debts Remaining Open" | CT to NY |
| EIGHT | February 2, 2007 | 87 Saugatuck Ave, Westport | Facsimile including HUD-1 and other mortgage documents | CT to NY |
| NINE | April 13, 2010 | 9 Fragrant Pines, Westport | E-mail with attached sales contract and claim that contract had been executed | VA to NY |

All in violation of Title 18, United States Code, Section 1343.

A TRUE BILL

/s/
FOREPERSON

DEIRDRE M. DALY
ACTING UNITED STATES ATTORNEY

RAHUL KALE
ASSISTANT UNITED STATES ATTORNEY

-16-