**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| WILLIAM A. TRUDEAU, JR., | : | CIVIL ACTION NO. |
| Petitioner, | : | 3:16-CV-273 (JCH) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | MAY 3, 2017 |
| Respondent. | : | |

### RULING RE: MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE

## I.    INTRODUCTION

Petitioner, William A. Trudeau, Jr. ("Trudeau"), filed a Motion to Vacate, Set

Aside or Correct Sentence ("Mot." and "Mot. Addendum") (Docs. No. 1 and 9) pursuant

to section 2255 of title 28 of the United States Code.  Trudeau claims that his sentence

is invalid due to an erroneous jury instruction.[1]  See Mot. at 6.  Respondent, the United

States ("the Government") opposes the Motion on the grounds that it is untimely filed

and without merit, see United States' Response ("Response") (Doc. No. 12) at 6, 8, as

well as on the grounds that it is procedurally defaulted, see Third Sur-Reply (Doc. No.

28) at 1, 4–6.  The court held a hearing on this Motion on January 20, 2017.

For the reasons set forth below, Trudeau's Motion to Vacate, Set Aside or

Correct Sentence (Docs. No. 1 and 9) is **denied**.

## II.    BACKGROUND

In November 2010, a grand jury indicted Trudeau on nine counts of conspiracy,

---

[1] Trudeau, acting pro se, had originally also claimed that his sentence was invalid due to (1) ineffective assistance of counsel, see Mot. at 6–7; (2) sentencing based on acquitted conduct, see Mot. at 6–7; and (3) actual innocence, see Plaintiff's Supplemental Brief and Memorandum (Doc. No. 9-1) at 3. Acting through counsel, Trudeau later withdrew these three claims.  See Reply (Doc. No. 16) at 17 n.6.

bank fraud, mail fraud, and wire fraud.  <u>See</u> Indictment (Case No. 10-CR-234, Doc. No. 1) at 1, 14–16.  Relevant here, Count One was a conspiracy count, <u>see id.</u> at 1; and Count Nine was an April 2010 wire fraud charge involving real property at 9 Fragrant Pines in Westport, CT, <u>see id.</u> at 15–16.  At trial, an acquaintance of Trudeau named James Agah ("Agah") testified that Trudeau had convinced Agah to loan him $50,000, with which to make repairs on 9 Fragrant Pines, by telling Agah that Trudeau had a buyer for the property and an executed contract.  <u>See</u> Transcript of Proceedings, Trudeau v. United States, No. 10-CR-234 (D. Ct.) ("Tr.") Vol. VIII, 54–55, 62.  Trudeau's wife, Heather Bliss ("Bliss"), owned 9 Fragrant Pines.  <u>See id.</u> Vol. I, 90–91.  Agah testified that he was offered mortgages on other properties as collateral for his loan. <u>See id.</u> VIII, 70.  Evidence indicated that Trudeau emailed Agah an unsigned contract for 9 Fragrant Pines, falsely represented the contract to be signed, and emailed Agah instructions which Agah used to wire the $50,000 to Trudeau.  <u>See id.</u> Vol. VIII, 60–62, 64.  Agah testified that Trudeau had represented the buyer to be James Finger ("Finger").  <u>See id.</u> VIII, 55–56.  Finger testified that, in reality, he had discussed with Trudeau the possibility of buying 9 Fragrant Pines, but that the two had been unable to agree on price.  <u>See id.</u> VIII, 76–77.

At the charging conference, the parties and the court discussed the possibility of including an aiding and abetting jury instruction.  <u>See</u> Tr. Vol. VII, 28–30.  Trudeau opposed inclusion of such an instruction.  <u>See id.</u> Vol. VII, 28–30.  Nevertheless, the jury charge ultimately included an aiding and abetting jury instruction for counts including Count Nine.  <u>See id.</u> Vol. X, 65–67.  Trudeau did not object to the content of the aiding and abetting instructions at trial.  <u>See</u> Reply (Doc. No. 16) at 27.

This court has set forth the procedural history that follows in ruling on a Motion

for Reconsideration in Trudeau's criminal case:

> On October 9, 2012, a jury convicted Trudeau of one count of wire fraud and the count of conspiracy. [On February 15, 2013, this] court sentenced Trudeau to 188 months imprisonment, five years of supervised release, and restitution of $4,260,008.40. Trudeau appealed his sentence, making arguments [including] that the jury convicted him of a single, $50,000 wire fraud (Count Nine), and that the fraud set forth in Count Nine was necessarily the object of the conspiracy for which he was convicted (Count One).

Ruling on Mot. for Reconsideration, United States v. Trudeau, No. 10-CR-234 (JCH),

2016 WL 591754, at *1–2 (D. Conn. Feb. 11, 2016) (citations omitted). Trudeau did not

raise the sufficiency of the aiding and abetting instructions on direct appeal. See Reply

at 12 n.5.

On April 14, 2014,

> [t]he Second Circuit rejected [Trudeau's] arguments on direct appeal, finding that the court acted properly when it found, by a preponderance of the evidence and for purposes of sentencing, that the conspiracy for which Trudeau was convicted was a multi-object conspiracy that went beyond the single wire fraud charged in Count Nine. See [United States v. Trudeau, 562 F. App'x. 30, 33–34 (2d Cir. 2014)]. The Second Circuit held, however, that the district court improperly concluded that the statutory maximum sentence for Trudeau's crimes was thirty years, and therefore remanded for the court to assess whether it would have sentenced Trudeau differently if the court had used the correct statutory maximum in its deliberations. Id. at 35.

Trudeau, 2016 WL 591754, at *2 (citations omitted). Trudeau petitioned for certiorari on

September 4, 2014. See First Pet. For Cert. (Doc. No. 21-9). The Supreme Court

denied certiorari on October 14, 2014. See Trudeau v. United States, 135 S. Ct. 388

(2014).

On remand, this

> court found that it would have imposed the same sentence on
> Trudeau had it understood that the statutory maximum was
> twenty years imprisonment, and therefore declined to
> resentence him. Trudeau appealed again, and again
> contended that the court erred in determining for purposes of
> sentencing that the conspiracy for which Trudeau was
> convicted was multi-object. The Second Circuit summarily
> affirmed the court's decision not to resentence Trudeau.

Trudeau, 2016 WL 591754 at *2 (citations omitted). The Second Circuit issued its

summary affirmance on November 5, 2014. See id. at *2. Trudeau petitioned for

certiorari again on January 12, 2015. See Second Pet. for Cert. (Doc. No. 21-8). The

Supreme Court denied Trudeau's second petition for writ of certiorari on February 23,

2015. See Trudeau v. United States, 135 S. Ct. 1466 (2015).

On October 13, 2015, Trudeau filed a Motion for a New Trial on account of

newly-discovered evidence. Trudeau, 2016 WL 591754 at *2. This court ultimately

denied the motion for new trial on February 16, 2016. See United States v. Trudeau,

No. 10-CR-234 (JCH), 2016 WL 614686, at *1 (D. Conn. Feb. 16, 2016). In March

2016, Trudeau appealed this court's denial of a new trial, but the Second Circuit

dismissed the appeal. See Appeal Dismissal (Second Circuit case 16-626, Doc. No.

28).

Trudeau filed the present habeas action on February 22, 2016, pro se. See Mot.

at 1. An attorney later appeared for Trudeau, see Notice of Appearance (Doc. No. 10),

and filed a brief, see Reply at 51.

Trudeau's habeas claim is based on the Supreme Court case Rosemond v.

United States, 134 S. Ct. 1240 (2014). Rosemond held that a defendant needs

"advance knowledge" of firearm presence to have the requisite intent to aid and abet an

armed drug deal. Id. 134 S. Ct. at 1251. Trudeau argues that the jury should have

been instructed that Trudeau needed "advance knowledge" that an individual he allegedly aided and abetted was engaged in wire fraud, in order for Trudeau to be guilty of aiding and abetting the fraud in Count Nine. <u>See</u> Reply at 31–32. Trudeau also argues that, if the court vacates Count Nine, then the court must also vacate Count One. <u>See</u> Reply at 48.

## III.    LEGAL STANDARD

Section 2255 of title 28 of the United States Code provides, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). As a general matter, "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." <u>Graziano v. United States</u>, 83 F.3d 587, 589–90 (2d Cir. 1996) (internal quotation marks omitted).

The movant carries the burden of proving, by a preponderance of the evidence, that he is entitled to relief under section 2255. <u>See, e.g.</u>, <u>Triana v. United States</u>, 205 F.3d 36, 40 (2d Cir. 2000).

## IV.    DISCUSSION

### A.    <u>Timeliness</u>

Under section 2255, a federal petition for a writ of habeas corpus is subject to a

one-year statute of limitations.  See 28 U.S.C. § 2255(f).  The statute of limitations

begins running upon the occurrence of the latest of four events:

> (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id.  Finality attaches when the Supreme Court denies a petition for a writ of certiorari to

review a conviction.  Clay v. United States, 537 U.S. 522, 527 (2003).  The Supreme

Court denied Trudeau's first petition for writ of certiorari on October 14, 2014.  See

Trudeau, 135 S. Ct. 388.  The Government thus argues that Trudeau's conviction

became final on October 14, 2014.  See Response at 7.  The Supreme Court denied

Trudeau's second petition for writ of certiorari on February 23, 2015.  See Trudeau, 135

S. Ct. at 1466.  Trudeau thus suggests that his conviction became final on February 23,

2015.  See Reply at 17–18.  Trudeau filed the present habeas action on February 22,

2016, more than a year after the first certiorari denial but less than a year after the

second.  See Mot. at 1.  Because the court agrees with Trudeau that the second

certiorari denial finalized his conviction, the court finds his habeas action timely.

The Government points to a Second Circuit decision holding that the statute of

limitations begins to run at the time of certiorari denial, rather than the time of rehearing

denial.  See Response at 7 (citing Rosa v. United States, 785 F.3d 856, 857 (2d Cir.),

cert. denied, 136 S. Ct. 270 (2015)).  Here, however, both Supreme Court rulings are

certiorari denials—neither is a rehearing denial.[2] <u>Rosa</u> is therefore not on point.

In a case with a similar procedural background to the present litigation, a judge in this District held that the habeas statute of limitations began to run after the Supreme Court's second certiorari denial. <u>See</u> <u>Jones v. United States</u>, No. 3:12CV601 (EBB), 2014 WL 6871198, at *2 (D. Conn. Dec. 5, 2014). In <u>Jones</u>, as here, the Supreme Court (1) first declined to review a decision affirming a conviction but remanding for reconsideration of the sentence; and (2) then declined to review the decision affirming the district court's choice to retain the original sentence. <u>See</u> <u>id.</u> at *2. Another court in this Circuit has similarly found a habeas action timely when filed within a year of the Supreme Court's second certiorari denial. <u>See</u> <u>Duque v. United States</u>, No. 08CIV.9315 (RMB) (MHD), 2009 WL 2370639, at *6 (S.D.N.Y. July 31, 2009) ("It was not until the Second Circuit affirmed the petitioner's sentence and his second petition for certiorari was denied . . . that his conviction became final."). In <u>Duque</u>, as here, the first certiorari denial was from a decision "affirming the conviction" but leaving "open the question of an appropriate sentence." <u>Id.</u> at *6. <u>Duque</u> explained that, "[a] judgment of conviction encompasses both a determination of guilt and the imposition of sentence, and until both are settled, the judgment is not final." <u>Id.</u> at *6. The court thus finds that Trudeau's habeas action is timely.[3]

---

[2] The Government argues that, despite being labeled as a petition for certiorari, Trudeau's second petition was actually a mislabeled "motion for reconsideration," because it repeated certain arguments made in the first petition. Response at 4. The Government cites no authority, however, for the proposition that a document ceases to be a petition for certiorari if it repeats arguments made in an earlier petition. <u>See</u> Response at 4, 7; Sur-Reply (Doc. No. 20) at 3 (simply quoting dictionary for definition of "rehear"). Moreover, the Supreme Court referred to this second petition as a "[p]etition for writ of certiorari," <u>Trudeau</u>, 135 S. Ct. at 1466, rather than construing it as something else.

[3] Because the court finds that Trudeau's habeas action is timely, the court need not address equitable tolling.

B.    Procedural Default

Because a "motion under § 2255 is not a substitute for an appeal," a petitioner generally must have raised a claim on appeal before doing so in a habeas petition. Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007) (quoting United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998)). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). 'Cause' refers to "cause for the failure to bring a direct appeal," and 'prejudice' refers to "actual prejudice from the alleged violations." Zhang, 506 F.3d at 166.

Trudeau admits that he did not object to the content of the aiding and abetting instructions at trial or on direct appeal. See Reply at 12 n.5., 27. As this court explained in a recent Ruling,

> The court thus asked the Government, at an oral argument in this habeas case on January 20, 2017, whether the Government considered Trudeau's jury instruction claim to have been procedurally defaulted. Counsel for the Government responded by indicating that he believed United States Department of Justice (USDOJ) policy prevented him from asserting a procedural default claim under the circumstances of this case. On January 23, 2017, counsel for the Government followed up with a confusing email to the courtroom deputy, copy to Trudeau's habeas counsel. The email stated that, "as per USDOJ policy, [Government counsel is] not arguing that procedural default has occurred." However, the email went on to state that a petitioner in Trudeau's position "must show cause and prejudice," which, the court notes, are legal requirements for overcoming a procedural default. See Bousley v. United States, 523 U.S. 614, 622 (1998). Because the email was unclear to the court, the court directed Government counsel to file a memorandum

> explaining the Government's position. On January 27, 2017, the Government filed a Third Sur-Reply (Doc. No. 28). The Third Sur-Reply states: "Further review of the Department of Justice policy has clarified that the Government is not institutionally barred from arguing procedural default in the instant matter . . . . [T]he Government respectfully asks this Court to consider procedural default when scrutinizing Petitioner's collateral attack on his conviction." Third Sur-Reply at 1.

Ruling on Mot. to Amend (Doc. No. 32) at 2–3.

Although Trudeau argued in his initial briefing that his failure to object to the content of the aiding and abetting instructions at trial does not bar his <u>habeas</u> claim, Trudeau did not clarify in his initial briefing which of the two exceptions to the bar against asserting procedurally defaulted claims in a <u>habeas</u> petition—actual innocence or cause-and-prejudice—he believes apply. <u>See</u> Reply at 27–28. Furthermore, Trudeau's arguments in his initial briefing for why his claim is not foreclosed reference exceptions to the <u>Teague</u> anti-retroactivity rule, rather than to the procedural default rule. <u>See</u> Reply at 27–28; <u>see also</u> <u>Teague v. Lane</u>, 489 U.S. 288, 310 (1989) ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."). For instance, Trudeau's initial briefing relies on <u>Bousley</u>'s discussion of special treatment for claims that are based on decisions interpreting criminal statutes to exclude certain conduct. <u>See</u> Reply at 27–28 (quoting <u>Bousley</u>, 523 U.S. at 620). <u>Bousley</u> mentions such claims, however, as an exception to the <u>Teague</u> anti-retroactivity rule, rather than an exception to the procedural default rule. <u>See</u> 523 U.S. at 619–20.

At oral argument, Trudeau stated that he believes he falls under the cause exception to the procedural default rule. However, rather than arguing that Trudeau had

cause for his procedural default, Trudeau's supplemental briefing on the issue of procedural default argues that the court should skip to the merits of his claim without addressing the procedural default defense.  See Fourth Sur-Reply (Doc. No. 33) at 2.

As detailed below, the court finds that Trudeau's claim is procedurally barred because, having failed to raise the claim in his criminal case, Trudeau can show neither actual innocence, nor cause and prejudice.  Moreover, the court is not persuaded by Trudeau's argument that the court is precluded from deciding this case on the basis of procedural default.

### 1.    Whether to Consider Procedural Default

A court "is not <u>required</u> to raise the issue of procedural default <u>sua sponte</u>," because "procedural default is normally a defense that the [Government] is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter."  <u>Trest v. Cain</u>, 522 U.S. 87, 89 (1997) (internal quotation marks and brackets omitted) (emphasis added); <u>see also</u> <u>Tavarez v. Larkin</u>, 814 F.3d 644, 649 n.2 (2d Cir. 2016) (quoting <u>Trest</u>); <u>Rosario v. United States</u>, 164 F.3d 729, 732 (2d Cir. 1998) (applying rule from <u>Trest</u> in section 2255 context).  Thus, it is beyond dispute that, before the Government asserted procedural default in its Third Sur-Reply, the court was free to proceed to the merits of Trudeau's claim without addressing procedural default.  Trudeau argues that, despite the fact that the Government eventually asserted procedural default, the defense is still waived due to the Government's failure to assert procedural default in its initial briefing.  <u>See</u> Fourth Sur-Reply at 2–4.  If Trudeau is correct, then the court still, at this stage, is free to proceed to the merits of Trudeau's claim without addressing procedural default.  <u>See</u> <u>Trest</u>, 522 U.S. at 89.  Trudeau cites cases from other Circuits

for the proposition that the affirmative defense of procedural default must be pled in the Government's "'answer,'" "'generally,'" Fourth Sur-Reply at 2 (quoting <u>Kaczmarek v. Rednour</u>, 627 F.3d 586, 592 (7th Cir. 2010)), "'at the earliest practical moment,'" Fourth Sur-Reply at 2 (quoting <u>Robinson v. Johnson</u>, 313 F.3d 128, 137 (3d Cir. 2002)), or "'in the first responsive pleading,'" Fourth Sur-Reply at 2 (quoting <u>Morrison v. Mahoney</u>, 399 F.3d 1042, 1046 (9th Cir. 2005)).  As a preliminary matter, the court notes that <u>Kaczmarek</u>, one of the cases cited by Trudeau, in fact stands for the proposition that a procedural default defense is <u>not</u> considered waived in circumstances similar to the present.  In <u>Kaczmarek</u>, the state failed to assert a procedural default as to a particular claim in its initial briefing.  <u>See</u> 627 F.3d at 593.  "However," because the state "raised procedural default before the district court in a motion for reconsideration," and thus "[t]he parties fully briefed the issue in connection with that motion," the Seventh Circuit observed that, "not only was the procedural default argument presented to the district court—albeit in an untimely fashion—but [the petitioner] was on notice that procedural default could be an issue on appeal," and, "[m]oreover, he took the opportunity to argue against the application of the bar in his reply brief."  <u>Id.</u> at 594.  Therefore, the Seventh Circuit did not find an "implicit waiver" of the procedural default defense.  <u>Id.</u> at 594.  The Circuit determined that it was "appropriate" to address the procedural default argument.  <u>Id.</u> at 594–95 (considering procedural default defense and concluding that the defense barred court from considering petitioner's claim).

This case is analogous to <u>Kaczmarek</u>.  Here, the procedural default issue has been "fully briefed," Trudeau is "on notice that procedural default" is an issue on which this court may rule, and "[m]oreover, he took the opportunity to argue against the

application of the bar in his" Fourth Sur-Reply.  Id. at 594.  Thus, under Kaczmarek, the

procedural default defense is not waived here.  That said, the other two cases Trudeau

cites, Robinson and Morrison, indeed stand for the general proposition that the

Government may waive the right to assert an affirmative defense, such as procedural

default, if the Government does not raise the defense in a timely manner.  See

Robinson, 313 F.3d at 137; Morrison, 399 F.3d at 1046.  Here, the court need not

decide whether the Government waived its right to assert the defense of procedural

default by failing to raise the issue earlier, because, as discussed below, this court was

free to either (1) raise procedural default sua sponte, or (2) as the court instead chose

to do, give the Government an opportunity to raise procedural default.

As Trudeau concedes, see Fourth Sur-Reply at 4–5, a court may raise

procedural default sua sponte, despite the Government having failed to raise it.  See

Rosario, 164 F.3d at 732; Figueroa v. Heath, No. 10-CV-0121 (JFB), 2011 WL

1838781, at *7 (E.D.N.Y. May 13, 2011).  Here, the court thus was free to raise the

issue of procedural default sua sponte, before the Government asked the court to

consider procedural default.  For instance, the Second Circuit determined that it was

prudent to raise procedural default sua sponte in a case where the Circuit determined

that raising the issue was "necessary to protect the finality of federal criminal

judgments," where "the government was not blameworthy in failing to raise this issue,"

and where "the procedural default [was] manifest from the record and, hence, resolution

of this defense [did] not require further fact-finding."  Rosario, 164 F.3d at 732–33.

Similarly, the Second Circuit raised procedural default sua sponte in a case where "the

government [ ] failed to raise the defense because . . . it incorrectly deemed that it had no merit." Washington v. James, 996 F.2d 1442, 1448 (2d Cir. 1993).

That said, the Second Circuit has cautioned that courts "should not lightly raise the issue of a defendant's procedural default sua sponte[,] . . . lest we be cast in the role of a second line of defense, protecting government prosecutors from their errors." Rosario, 164 F.3d at 733; see also Figueroa, 2011 WL 1838781 at *7 (quoting Rosario). Here, the procedural default is "manifest from the record and, hence, resolution of this defense does not require further fact-finding," Rosario, 164 F.3d at 733, because Trudeau has admitted the procedural default, see Reply at 12 n.5., 27. Moreover, the Government's reason for failing to raise the defense initially was that "it incorrectly deemed that" USDOJ policy prohibited the Government from raising the defense. Washington, 996 F.2d at 1448; see also Ruling on Mot. to Amend at 2–3 (explaining evolution of Government's position on procedural default). Thus, the case at bar may have been an appropriate situation for the court to raise procedural default sua sponte, even if the Government had never asserted the defense.[4]  Instead of simply raising the issue sua sponte, however, the court chose to ask the parties for additional argument and briefing on the topic of procedural default, which led to the Government eventually asserting the defense. See Third Sur-Reply at 1.

---

[4] Trudeau asserts that the court should not raise procedural default sua sponte because, "while he clearly has sought such opportunity, the petitioner in this case has not been afforded a fair and meaningful opportunity by this Court to be heard in opposition to the newly-raised issue of procedural bar." Fourth Sur-Reply at 5.  The court finds this assertion puzzling, given that Trudeau makes this assertion within his supplemental briefing on the topic of procedural default.  If Trudeau had arguments to present regarding why his claim is not procedurally defaulted, or why Trudeau is actually innocent, or has cause-and-prejudice for his procedural default, Trudeau should have presented these arguments in the very supplemental briefing where Trudeau instead asserts that he lacks an opportunity to present such arguments.

Where the Government has failed to raise procedural default, as an alternative to simply raising the issue sua sponte, a court may instead choose to "ask for further briefing," so as to aid the court in "dispos[ing] of [the] case on [the] basis [of procedural default, which was] not previously argued." Trest, 522 U.S. at 92. Here, after the court received the initial briefing on Trudeau's habeas petition, the court asked the parties about procedural default at oral argument, and then gave the parties an opportunity to submit supplemental briefing on the issue of procedural default. Both parties have submitted briefing on the topic. See Third Sur-Reply; Fourth Sur-Reply. In the Government's supplemental briefing, the Government argued that Trudeau's habeas claim is procedurally defaulted. See Third Sur-Reply at 1. Trest makes clear that, for a court to respond to the Government's initial failure to raise procedural default by "giving the parties an opportunity for argument," or "ask[ing] for further briefing," so that the court may ultimately decide the petition on the basis of procedural default, is different than the court simply "rais[ing] the procedural default sua sponte:" Trest had declined to reach the issue of whether "the law permitted" "sua sponte" consideration of procedural default, but Trest nonetheless suggested that the court should have "giv[en] the parties an opportunity for argument" and "ask[ed] for further briefing" on the topic of procedural default. 522 U.S. at 90, 92. This is what the court did.

To conclude, where the Government initially failed to raise the defense of procedural default, this court was free to ask the parties for additional argument and briefing on the matter, and now that the Government has asserted the defense of procedural default, it is proper for this court to consider whether procedural default bars Trudeau's habeas petition. See id. at 92. Moreover, even if the Government had never

14

raised the issue of procedural default, the court would have been free to raise the issue sua sponte.  See Rosario, 164 F.3d at 732.  The court thus need not decide whether the court was "required" to consider procedural default based on the fact that the Government eventually raised the defense, or rather, whether the Government's initial failure to raise procedural default amounts to a waiver of the Government's right to assert the procedural default defense.  Trest, 522 U.S. at 89.

Trudeau procedurally defaulted his jury instructions claim by failing to raise it in his criminal case.  See Reply at 12 n.5., 27.  The court thus proceeds to analyze whether this procedural default bars Trudeau's habeas petition, or whether one of the two Bousley exceptions—actual innocence, or cause and prejudice—applies to forgive Trudeau's procedural default.  See 523 U.S. at 622.

### 2.    Actual Innocence

Trudeau has not put forth evidence of actual innocence.  Rather, Trudeau withdrew his actual innocence claim.  See Reply at 17 n.6.  Thus, Trudeau can only overcome his procedural default if he can show both cause and prejudice.

### 3.    Cause

Trudeau has not shown cause for failure to raise his claim on direct review.   The fact that the Supreme Court decided Rosemond on March 5, 2014, after Trudeau's trial,[5] cannot supply cause for Trudeau to fail to raise such a claim, because an advance knowledge requirement for aiding and abetting had not been conclusively rejected by the courts, and because the idea of an advance knowledge requirement was not entirely

---

[5] Note that the Supreme Court decided Rosemond before the Second Circuit decided Trudeau's first direct appeal.  See Trudeau, 562 F. App'x. 30 (decided April 14, 2014).

novel.

In 2012, the Second Circuit ruled that cause existed for a petitioner who raised an argument for the first time in his 2254 petition because, at the time of his trial, a state supreme court ruling directly opposed to the argument "still controlled." Gutierrez v. Smith, 702 F.3d 103, 112 (2d Cir. 2012). Thus,

> the legal basis for [the argument] was not available to counsel at the time of [petitioner's] trial. When [petitioner] was tried, counsel could not be obliged to challenge preemptively the conviction based on what then was an unlikely development in the law.

Id. at 112 (internal quotation marks and brackets omitted). The Circuit explained that,

> futility may constitute cause where prior [ ] case law has consistently rejected a particular constitutional claim. But futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.

Id. at 111–12 (citations and internal quotation marks omitted).

"The futility test to excuse a default is strict: 'the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all.'" United States v. Thorn, 659 F.3d 227, 233 (2d Cir. 2011) (quoting Smith v. Murray, 477 U.S. 527, 537 (1986)) (finding that petitioner failed to establish cause because his argument was one that other defense attorneys had made and that the Second Circuit had not conclusively rejected, even though other circuits had conclusively rejected it).

Thus, the question is whether, prior to Rosemond, either (1) controlling precedent had conclusively determined that an aider and abettor need not have advance knowledge, or (2) the idea of an advance knowledge requirement was entirely novel. This court is unaware of any Second Circuit or Supreme Court ruling conclusively

16

rejecting the idea that aiding and abetting requires foreknowledge. Thus, Trudeau has not shown that controlling precedent had conclusively rejected the argument Trudeau now advances. Furthermore, the idea of a foreknowledge requirement for aiding and abetting a gun crime predates Rosemond. See Herrera v. United States, No. 93 CR. 203 (TPG), 1998 WL 770559, at *3 (S.D.N.Y. Nov. 3, 1998) (quoting contents of an aiding and abetting jury charge which mentions "advance knowledge" of a firearm).

Trudeau has thus failed to show cause for his procedural default. For this reason alone, Trudeau's Motion to Vacate, Set Aside or Correct Sentence must be denied.

### 4.    Prejudice

The Government asserts that any inadequacy in the aiding and abetting instructions could not entitle Trudeau to habeas relief, due to evidence of Trudeau's direct participation in wire fraud. See Response at 9. The Government argues that Trudeau would have received the same trial outcome regardless of the aiding and abetting instructions. See id. at 12. The court agrees. Trudeau thus cannot show prejudice.

Any inadequacy in the aiding and abetting instruction could only entitle Trudeau to habeas relief if said instruction prejudiced him. A petitioner may obtain "collateral relief for errors in the jury charge" only if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." United States v. Frady, 456 U.S. 152, 169 (1982) (internal quotation marks omitted). "This standard is not met where the instruction would not have affected the verdict." Williams v. Smith, No. 10-CV-03043 (JG), 2011 WL 96735, at *11 (E.D.N.Y. Jan. 11, 2011) (citing Henderson v. Kibble, 431 U.S. 145, 156 (1977) and Blazic v. Henderson, 900 F.2d 534, 543 (2d Cir.

1990)).  Moreover, "[t]he Supreme Court has made it clear that errors in instructions to the jury rarely rise to a constitutional level." Victory v. Bombard, 570 F.2d 66, 69 n.3 (2d Cir. 1978).  A petitioner may not obtain habeas relief merely because "the instruction is undesirable, erroneous, or even universally condemned." Frady, 456 U.S. at 169 (internal quotation marks omitted).  The petitioner bears "the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage." Id. at 170 (emphasis in original); see also Lopez v. Scully, 614 F. Supp. 1135, 1140 (S.D.N.Y. 1985) ("Where petitioner objects to jury instructions, the allegedly improper charge must have worked to his actual and substantial disadvantage.").

Here, the jury could have found Trudeau guilty of Count Nine based on either one of two alternate theories: direct wire fraud, or aiding and abetting said fraud.  See, e.g., Tr. Vol. X, 65 ("If you have found that Mr. Trudeau is guilty of [Count Nine], then you need not consider the aiding and abetting charge with respect to [Count Nine].").  The jury did not report which theory it chose.  See Verdict Form (Case No. 10-CR-234, Doc. No. 171) at 2.  Even if the aiding and abetting instructions had been erroneous, Trudeau nevertheless would only be entitled to habeas relief if the jury in fact convicted him based on an aiding and abetting theory.

On direct review, courts invalidate verdicts if unsure whether the jury convicted based on a proper instruction, or an alternate, erroneous instruction.  See, e.g., Yates v. United States, 354 U.S. 298, 312, overruled on other grounds by Burks v. United States, 437 U.S. 1 (1978) ("[T]he proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another,

and it is impossible to tell which ground the jury selected."); United States v. Scotti, 47 F.3d 1237, 1246 (2d Cir. 1995) (concluding that district court did not abuse discretion by granting new trial when unsure whether jury convicted based on erroneous principal liability instruction or valid aiding and abetting instruction). The appropriate response to an erroneous jury instruction differs, however, between a criminal case and a habeas action. See Frady, 456 U.S. at 164–65 (disapproving appellate court's collateral review use of direct review jury instructions standard, because "a final judgment commands respect"). Here, the burden is on Trudeau to establish that the aiding and abetting jury instructions actually disadvantaged him. See id. at 169–70. Trudeau cannot meet this burden, due to the evidence that Trudeau committed wire fraud directly.

The evidence presented to the jury was sufficient for the jury to find that Trudeau committed the wire fraud charged in Count Nine directly, and did not merely aid and abet someone else in doing it. Trudeau claims that evidence suggested he acted "at the instruction of, on behalf of, and/or for the benefit of" his wife. See Reply at 38. Trudeau cites the following evidence: First, a Government witness testified that Trudeau said Bliss had veto power over property deals. See id. at 38–30 (citing Tr. Vol. VIII, 37). Second, Bliss was the sole owner of 9 Fragrant Pines, and the unsigned contract that Trudeau sent Agah was between Bliss and Finger. See Reply at 39; see also Tr. Vol. I, 90; Vol. VIII. 65. Third, Bliss owned the properties used as collateral for Agah's loan, and provided a mortgage to collateralize the loan. See Reply at 39–40; see also Tr. Vol. VIII, 57, 70. Fourth, the Government advocated for an aiding and abetting instruction, and Trudeau opposed said instruction. See Reply at 41–42; see also Tr. Vol. VII, 28–30.

The fact of a second person having veto power over an action cannot transform that action from a direct crime into mere aiding and abetting, however. The facts regarding Bliss's ownership of relevant properties, combined with the jury instruction preferences of the parties, are similarly insufficient to demonstrate that Trudeau merely aided and abetted Bliss. Furthermore, there was substantial, credible testimony that Trudeau was heavily involved in the transaction that led to Bliss owning 9 Fragrant Pines in the first place, and that Trudeau had originally put Trudeau's mother forth as the prospective purchaser, before switching the purchaser to Bliss. See Tr. Vol. I. 90–91.

In support of its argument that the jury convicted Trudeau based on a direct wire fraud theory, the Government cites evidence including that Trudeau is the one who convinced Agah to loan him $50,000, see Response at 11; see also Tr. Vol. VIII, 54–55; and that Trudeau is the one who sent Agah the 9 Fragrant Pines contract, see Response at 11–12; see also Tr. Vol. VIII, 64. Additionally, Agah testified that Trudeau told Agah that Finger had signed the 9 Fragrant Pines contract, see Tr. Vol. VIII, 56; that Trudeau is the only person who spoke with Agah regarding the properties offered as collateral for Agah's loan, see id. Vol. VIII, 60; that Trudeau emailed Agah instructions to wire the $50,000 into Trudeau's bank account, see id. Vol. VIII, 60–62; and that Agah accordingly paid the $50,000 to Trudeau, see id. Vol. VIII, 65. Moreover, Finger testified that Trudeau, not Bliss, was the person with whom Finger discussed potentially buying 9 Fragrant Pines, but that the two never came to an agreement on price. See id. Vol. VIII, 76–77. This evidence shows that Trudeau was the principal in Count Nine, rather than merely an aider and abettor. Trudeau thus certainly cannot "shoulder the

burden of showing" that "the errors at his trial . . . worked to his actual and substantial disadvantage," as required under Frady, see 456 U.S. at 170, because Trudeau cannot show that he was convicted under the challenged instruction.  In light of his procedural default, Trudeau's failure to show cause and his failure to show prejudice constitute two independently sufficient reasons to deny Trudeau's Motion to Vacate, Set Aside or Correct Sentence.

C.      Jury Instructions

Because Trudeau's claim is barred by procedural default, Trudeau's section 2255 petition cannot survive regardless of whether the underlying petition has merit.  That said, Trudeau's petition also fails on the merits.

1.      Whether to Address Merits

It has been said that the fact that claims are barred by procedural default "prevent[s a court] from addressing the merits of these claims."  Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (stating rule in section 2254 context); see also Sosa v. United States, No. 02 CIV. 1850 (PKL), 2003 WL 1797885, at *5 (S.D.N.Y. Apr. 3, 2003) (stating rule in section 2255 context); Carson v. Superintendent of the Elmira Corr. Facility, No. 16-CV-688 (FPG), 2017 WL 759842, at *2 (W.D.N.Y. Feb. 28, 2017) (stating rule in recent section 2254 case).

However, the rule does not bar a court from first finding that a habeas claim was procedurally defaulted, and then ruling in the alternative that the claim also fails on the merits.  See, e.g., Haynes v. Thaler, 133 S. Ct. 639 (2012) ("[T]he District Court, after first concluding that [the petitioner] had procedurally defaulted his claim, . . . ruled in the alternative that the claim failed on the merits."); Ghailani v. United States, No. 16-CV-

4444 (LAK), 2017 WL 699819, at *1 (S.D.N.Y. Feb. 7, 2017) (denying motion for reconsideration where court had held both that petitioner's claim was barred by procedural default, and also that, even if claim "had not been foreclosed by procedural default, it would have been rejected on the merits"); Ermichine v. United States, No. 06 CIV. 10208 (LAP) (JL), 2011 WL 1842951, at *6 (S.D.N.Y. May 12, 2011) ("This claim fails because it is procedurally defaulted and, in any event, without merit.").

Having ruled that Trudeau's claim was procedurally defaulted, the court also rules, in the alternate, that the claim fails on the merits. Based on the circumstances here, where Trudeau contests the court's authority to consider his procedural default, and where Trudeau's underlying jury instructions claim is without merit, the court will proceed to address the merits of his jury instructions claim.

### 2. Adequacy of Aiding and Abetting Instructions

Trudeau argues that the court gave incorrect jury instructions for aiding and abetting in Count Nine. See Mot. at 6. The court disagrees. In support of his argument, Trudeau cites Rosemond. See Mot. at 6. The Supreme Court decided Rosemond on March 5, 2014, after Trudeau's trial but before the April 14, 2014 Second Circuit decision.[6] See Rosemond, 134 S. Ct. 1240. Rosemond held that a district court erred in failing to tell a jury that a defendant "needed advance knowledge" of firearm presence to have the requisite intent to aid and abet an armed drug deal. Id. at 1251.

---

[6] The Teague anti-retroactivity rule is thus inapplicable here, as Trudeau's case became final after the Supreme Court decided Rosemond. As a general matter, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." Teague v. Lane, 489 U.S. 288, 310 (1989). For anti-retroactivity purposes, "[f]inality occurs when direct [ ] appeals have been exhausted and a petition for writ of certiorari from [the Supreme] Court has become time barred or has been disposed of." Greene v. Fisher, 132 S. Ct. 38, 44 (2011).

Rosemond first summarized previous cases by stating that, "for purposes of aiding and abetting law, a person who actively participates in a criminal scheme knowing its extent and character intends that scheme's commission," 134 S. Ct. at 1249; and that the intent requirement "is satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense," id. at 1248–49. With respect to the crime of aiding and abetting an armed drug deal or other violent crime under section 924(c) of title 18 of the United States Code, Rosemond then found that "knowledge of a firearm must be advance knowledge—or otherwise said, knowledge that enables [the person] to make the relevant legal (and indeed, moral) choice," so that the person "can attempt to alter" a confederate's plan to carry a gun during the drug deal "or, if unsuccessful, withdraw from the enterprise." Id. at 1249.

Trudeau argues that Rosemond's advance knowledge requirement applies to aiding and abetting any crime—rather than just a section 924(c) violation. See Reply at 31. The court disagrees.

The Second Circuit has indicated that Rosemond's advance knowledge requirement is specific to section 924(c): in a case about that requirement, the Circuit stated that, "in the wake of Rosemond v. United States, general instructions on aiding and abetting liability . . . are insufficient and plainly erroneous in the context of a § 924(c) charge." United States v. Prado, 815 F.3d 93, 95 (2d Cir. 2016) (citation omitted) (emphasis added).

This court is not aware of any decision in this Circuit interpreting Rosemond's advance knowledge requirement to apply beyond section 924(c), and counsel for

Trudeau was unable to identify such a case when asked for one at oral argument. The court notes that the lack of any such case would be unusual if an advance knowledge requirement were indeed now required for all crimes—and not just for section 924(c) violations—because, if Rosemond universally changed the aiding and abetting jury instruction requirement, defendants throughout this Circuit would presumably be having their convictions reversed en masse due to inadequate jury instructions. Both at oral argument and in his briefing, Trudeau has cited the Second Circuit kidnapping case United States v. Zayac, 765 F. 3d 112 (2d Cir. 2014), for the proposition that Rosemond's advance knowledge requirement applies to aiding and abetting all crimes. See Reply at 31. Zayac, however, cites Rosemond only for Rosemond's "reiterat[ion]" of the general aiding and abetting standard, rather than for its advance knowledge holding.[7] See Zayac, 765 F. 3d at 121. In fact, the court notes that the aiding and abetting jury instructions used in the United States v. Zayac case lacked an advance knowledge requirement for offenses that do not involve firearm presence. See Jury Instrucs. in United States v. Zayac (Case No. 09-cr-136, Doc. No. 267) at 85–87. The Second Circuit affirmed the district court's judgment of conviction and did not state that these instructions should have included an advance knowledge requirement.[8] See Zayac, 765 F. 3d at 121, 123.

---

[7] In another kidnapping case, a court in this Circuit quoted Rosemond's holding that aiding and abetting requires only participation plus "full knowledge," rather than a hope that the scheme succeed. See Palacios-Rengifo v. United States, No. 09-CR-109-8 (JSR), 2016 WL 47519, at *2 (S.D.N.Y. Jan. 4, 2016). Palacios-Rengifo does not, however, state that such knowledge must be advance. See id. at *2.

[8] Even for a section 924(c) violation, the Zayac jury instructions lacked an explicit advance knowledge requirement. See Jury Instrucs. in Zayac at 87. However, the instructions did require that the defendant "performed some act that facilitated or encouraged [another person's] use or carrying of the firearm itself." Id. at 87.

That said, the First and Ninth Circuits have interpreted <u>Rosemond</u>'s advance knowledge requirement to apply beyond the section 924(c) context:  The Ninth Circuit describes <u>Rosemond</u>'s holding broadly as "that an accomplice must have 'advance knowledge' of the crime the principal is planning to commit."  <u>United States v. Nosal</u>, No. 14-10037, 2016 WL 7190670, at *11 (9th Cir. Dec. 8, 2016).  The First Circuit similarly describes <u>Rosemond</u>'s holding broadly, as that, "to establish the <u>mens rea</u> required to aid and abet a crime, the government must prove that the defendant participated with advance knowledge of the elements that constitute the charged offense."  <u>United States v. Encarnacion-Ruiz</u>, 787 F.3d 581, 588 (1st Cir. 2015).  The First Circuit thus held that, "under <u>Rosemond</u>, an aider and abettor of [child pornography production] must have known the victim was a minor when it was still possible to decline to participate in the conduct."  <u>Encarnacion-Ruiz</u>, 787 F.3d at 588. The Ninth Circuit similarly held that, under <u>Rosemond</u>, "[t]o aid and abet a robbery," a person "must have had foreknowledge that the robbery was to occur."  <u>United States v. Goldtooth</u>, 754 F.3d 763, 768 (9th Cir. 2014).

The Eleventh Circuit, on the other hand, states affirmatively that <u>Rosemond</u> "did not hold that its ruling applied beyond aiding or abetting § 924(c) offenses."  <u>United States v. Persaud</u>, 605 F. App'x 791, 801 (11th Cir.), <u>cert. denied sub nom. Wilson v. United States</u>, 136 S. Ct. 533 (2015), and <u>cert. denied,</u> 136 S. Ct. 534 (2015) (declining to apply <u>Rosemond</u>'s advance knowledge requirement to aiding and abetting marijuana possession with intent to distribute).

The reasoning of <u>Rosemond</u> for its advance knowledge requirement supports an interpretation that that requirement only applies to section 924(c) violations:  <u>Rosemond</u>

states that a defendant needs advance knowledge of firearm presence in order to have chosen "to align himself with the illegal scheme in its entirety—including the use of a firearm." 134 S. Ct. at 1249. <u>Rosemond</u> explains:

> When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an <u>armed</u> offense. But when an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun.

<u>Id.</u> at 1249 (emphasis in original). While the above-quoted reasoning could apply by analogy to certain other crimes, said reasoning nonetheless focuses on the particulars of a section 924(c) violation. <u>Rosemond</u> also explains the advance knowledge requirement by stating that, for a defendant to walk away once the drug deal has already begun "might increase the risk of gun violence." <u>Id.</u> at 1251. This line of reasoning applies particularly to a crime that involves guns, rather than applying broadly to all crimes.

Furthermore, at oral argument, the Government advanced a theory that <u>Rosemond</u>'s advance knowledge requirement, if applied beyond section 924(c) violations, should apply only to "layered crimes," which involve two layers of illegality. In an armed drug deal, the first layer of illegality is the drug deal, and the second layer is firearm presence. The Government theorizes that <u>Rosemond</u> requires advance knowledge of the second layer of illegality, due to the risk that a jury might otherwise convict a defendant of aiding and abetting the entire layered crime, when the defendant had only intended the first layer. According to the Government's theory, standard aiding

and abetting jury instructions, which require that the individual intend the crime, are sufficient for non-layered crimes, because non-layered crimes do not carry the same risk that a jury would convict an individual who intended only a portion of the crime.

The court need not decide when, if ever, Rosemond's advance knowledge requirement may apply beyond the aiding and abetting of a section 924(c) violation. The court merely concludes that an express jury instruction on advance knowledge is unnecessary in the context of aiding and abetting wire fraud.

Here, the jury instructions stated:

> In order to aid or abet another to commit a crime, it is necessary that Mr. Trudeau willfully and knowingly associate himself in some way with the crime, and that he willfully and knowingly seek by some act to help make that crime succeed. To establish that Mr. Trudeau participated in the commission of the crime, the government must prove that Mr. Trudeau engaged in some affirmative conduct or overt act for the specific purpose of bringing about that crime. . . .  An aider and abettor must know that the crime is being committed and act in a way that is intended to bring about the success of the criminal venture.

Tr. Vol. X, 66–67 (reading instructions to jury); Jury Instructions (Case No. 10-CR-234, Doc. No. 169) at 78–79.  The Government notes correctly that these jury instructions comport with the general aiding and abetting knowledge and intention requirements, as reiterated in Rosemond.  See Response at 9; Rosemond, 34 S. Ct. at 1248–49. Trudeau argues, however, that the jury instructions should have required "'advance knowledge' that anyone [Trudeau] purportedly 'aided and abetted' was engaged in the substantive wire fraud offense alleged in Count Nine.'"  Reply at 31–32.  As discussed above, the court disagrees and finds the jury instructions here sufficient, because Rosemond did not require jury instructions to discuss advance knowledge in wire fraud cases.

Moreover, based on the jury instructions given and the facts of Trudeau's criminal case, the jury necessarily would have had to find that Trudeau had advance knowledge that wire fraud would occur, in order for the jury to convict him of aiding and abetting wire fraud. Trudeau's jury instructions require that "[a]n aider and abettor must know that the crime is being committed." Jury Instructions at 79. Thus, under these jury instructions, Trudeau would have had to have knowledge that wire fraud was occurring in order for the jury to convict Trudeau of aiding and abetting wire fraud. Based on the facts of Trudeau's criminal case, such knowledge would have had to be advance, for the following reasons: The fraud occurred when Trudeau sent the email to Agah with an unsigned contract attached, falsely representing the contract to be signed. Unlike in a multi-participant drug deal, where a defendant may see a gun in the room for the first time during the deal itself, and thus learn that a section 924(c) violation is occurring right at the moment when the violation occurs, it is not plausible that Trudeau would have gained knowledge of the fact that the contract he personally was emailing Agah lacked a signature at the exact moment when Trudeau sent the email. It would be absurd to assume, for instance, that Trudeau attached the contract to the email without being aware that it was unsigned and without checking to see if it was signed, but that, at the moment when Trudeau clicked "send" on the email, a person walked into the room to inform Trudeau that the email he was sending was unsigned. There was no evidence from which the jury could have come to such a conclusion. Rather, if Trudeau knew the contract was unsigned, and thus, as required by his aiding and abetting jury instructions, knew that wire fraud was occurring, Trudeau must have learned of the unsigned nature of the contract by the time Trudeau attached the contract to the

email—for instance, because Trudeau looked at the contract before attaching it to the email and saw that it was unsigned, or because Trudeau had continuous possession of the contract from the time of its creation and thus knew that Finger never signed it.[9] Thus, to find Trudeau aided and abetted the crime of wire fraud based on the jury instructions provided and the facts of the case, the jury necessarily would have had to find that Trudeau had advance knowledge that wire fraud would occur. For this reason, even if Rosemond applies, Trudeau's aiding and abetting jury instructions were adequate.

Because the jury instructions were adequate, Trudeau's habeas claim fails on the merits, in addition to being barred due to his procedural default.

## V.   CONCLUSION

For the reasons set forth above, the court **denies** Trudeau's Motion to Vacate, Set Aside or Correct Sentence (Docs. No. 1 and 9). Because Trudeau has not made a "substantial showing" of denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

Dated this 3rd day of May, 2017 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[9] The court need not consider the possibility that Trudeau could have learned of the occurrence of wire fraud after the fraud occurred, because the jury instructions require knowledge "that the crime is being committed," using the present tense. See Jury Instructions at 79.